Filed 12/13/23  P. v. Mayfield CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERT ANTONIO MAYFIELD,<br><br>    Defendant and Appellant. | A167825<br><br>(Napa County<br>Super. Ct. No. 22CR002824) |

Defendant Albert Antonio Mayfield pleaded no contest to charges of stealing a 2006 pickup truck and evading a police officer with reckless driving, a pursuit that ended with defendant totaling the vehicle.  The trial court awarded the victim restitution in the amount of $95,610.24, which was the retail value of a new 2023 truck of the same make and model.  Defendant argues, and the People concede, that the trial court abused its discretion by awarding the victim a windfall well beyond the value of his actual loss.  We agree, and so we vacate the restitution order and remand for a further restitution hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2022, a 2006 Ford F-350 pickup truck registered to Christopher Miller was reported stolen.  Defendant was found driving the stolen truck but he refused to pull over for police officers.  The pursuit ended when defendant

1

crashed the truck into a residence, damaging the home and totaling the truck.

Defendant was charged with evading an officer against traffic (Veh. Code, § 2800.4; count one), evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a); count two), and unlawful driving or taking of a vehicle with an allegation of a prior conviction (Veh. Code, § 666.5; count three). He pleaded no contest to counts two and three and admitted the prior conviction allegation attendant to count three, and the People dismissed count one. The trial court sentenced defendant to a total term of five years and four months in prison.

The trial court held a hearing to determine an appropriate amount of restitution to award the victims.[1] The probation report stated that Miller's insurer had settled his claim for the stolen vehicle in the amount of $21,568.65, but the prosecutor contended the "victim's insurance should play no part in calculating the restitution owed by the defendant." The trial court agreed. The prosecutor then argued that repairing the vehicle "wasn't an option," and that Miller had been unable to locate a Ford dealership in the area with a like vehicle. Thus, in order for Miller to obtain a replacement, the prosecutor urged the court to award the value of a new Ford F-350 truck in the amount of $95,610.24.

Defense counsel countered that the insurance settlement amount was relevant to determining the value of the stolen vehicle because "the insurance company, which has a great deal of interest in this, took some time investigating what the value of like property was, and paid that amount." Defense counsel also pointed out that the Kelley Blue Book value of a like

---

[1] The restitution awards to the owner of the damaged residence and his tenants are not at issue in this appeal.

vehicle was between $11,000 to $18,000, and that the prosecutor's request did not "comport[] in any way with like property."

The trial court found that a like vehicle was not available, and that despite defense counsel's "argument about a windfall," awarding Miller the value of a new truck was a "reasonable way of compensating [him] for the losses he suffered." Accordingly, the court ordered defendant to pay Miller $95,610.24 in restitution.

## DISCUSSION

Defendant contends the trial court abused its discretion by (1) considering irrelevant evidence concerning the retail value of a new Ford F-350 truck; (2) excluding evidence of the insurance settlement; and (3) ordering a windfall to Miller. The People concede the award was not rationally designed to determine the replacement cost of a like vehicle. We accept the concession and vacate the restitution order.

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing the court." (Pen. Code, § 1202.4, subd. (f).)[2] The award "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," including "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

---

[2]     Further unspecified statutory references are to the Penal Code.

"Like" property is property of the same or similar "type and age." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 995 (*Thygesen*).) In *Thygesen*, the court provided the following apt example: "If [the victim] . . . lost a 1995 Ford Taurus, it would be entitled to the replacement value of a similar 1995 Ford Taurus, not a 1999 model." (*Thygesen*, at p. 995.)

"A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall. [Citation.] While the court need not order restitution in the precise amount of loss, it 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172 (*Chappelone*).) A victim restitution order should not exceed the victim's actual loss. (*People v. Nguyen* (1994) 23 Cal.App.4th 32, 45.)

We review a trial court's restitution order for abuse of discretion. (*Chappelone*, *supra*, 183 Cal.App.4th at p. 1173.) In so doing, we recognize the court's discretion in setting the amount of restitution is broad. (*People v. Baker* (2005) 126 Cal.App.4th 463, 470.) So long as there is a factual and rational basis for the amount of restitution ordered, no abuse of discretion will be found. (*Id.* at p. 467.) However, a restitution order "resting on demonstrable legal error" constitutes an abuse of discretion. (*People v. Hume* (2011) 196 Cal.App.4th 990, 995.)

We conclude the trial court's restitution award rested on legal errors that warrant reversal. The court refused to consider the insurance settlement evidence based on the prosecutor's argument that the "victim's insurance should play no part in calculating" restitution. But to the extent the court believed the collateral source rule barred consideration of the insurance settlement for purposes of valuing Miller's loss, this was error.

4

The collateral source rule precludes deduction of compensation that a plaintiff has received from sources independent of the tortfeasor (e.g., the plaintiff's insurer) from the damages the plaintiff would otherwise collect from the tortfeasor. (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 548 (*Howell*).) In *Howell*, the court held the collateral source rule did not preclude deducting from the plaintiff's tort recovery amounts that were included in her medical provider's bill but for which she never actually incurred liability because the provider accepted a lesser amount as full payment. "Such sums are not damages the plaintiff would otherwise have collected from the defendant." (*Id.* at pp. 548–549.)

Likewise, the collateral source rule does not bar consideration of the insurance settlement for purposes of valuing Miller's loss. The insurance settlement evidence was not offered to *reduce* the amount of restitution Miller "would otherwise have collected" from defendant. (*Howell*, *supra*, 52 Cal.4th at p. 549.) Rather, the evidence was offered to show the insurer's valuation of the stolen vehicle in order to determine, in the first instance, the extent of Miller's actual economic loss. It is akin to the evidence of the lesser amount the medical provider accepted as full payment in *Howell*. That the insurance settlement evidence was offered to counter the $95,610.24 amount requested by the People was not in violation of the collateral source rule because $95,610.24 was not Miller's actual loss.[3]

---

[3] To be clear, once an appropriate restitution award is determined on remand, the collateral source rule still precludes offsetting that award by the amounts Miller received from his insurer. We simply hold that the rule does not bar admission of evidence of the insurer's valuation of the stolen vehicle to aid in determining Miller's economic loss. Additionally, we in no way intend to suggest the insurer's valuation is dispositive of Miller's economic loss, and we leave it to the trial court to assess and weigh the probative value of this evidence on remand.

The trial court also legally erred in awarding a sizeable windfall to Miller based on the value of a new Ford F-350 truck. There is no dispute that $95,610.24 exceeded the amount of Miller's loss. Yet, the court awarded restitution based on "property that was of greater quality than that which defendant[] stole. This contravened section 1202.4, subdivision (f)(3)(A)'s mandate that the victim is only entitled to compensation for *like* property. As such, it was an abuse of discretion." (*Chappelone, supra,* 183 Cal.App.4th at p. 1177.) "[I]n order to justify a restitution award that exceeds the loss caused by the defendant, the trial court must state that such excessive award was purposely made to serve a legitimate rehabilitative purpose." (*Thygesen, supra,* 69 Cal.App.4th at pp. 995–996.) The court did not do so here.

Finally, substantial evidence does not support the trial court's finding that a like vehicle was unavailable. No evidence supporting the unavailability of a like vehicle was submitted by the People with their restitution brief. Instead, the prosecutor told the court at the restitution hearing that "[t]he victim is not in a position to be able to go out and get a 2007 Ford F-350 4x4 truck. He did look. [¶] I'm looking at the dealerships right now. Napa Ford does not have one. Concord Ford does not have one. Vacaville Ford does not have one. Fairfield Ford does not have one." However, counsel's unsworn statements were not evidence. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 683.)

Moreover, the People did not cite any authority authorizing a significant windfall simply because the victim is unable to find a replacement of like property in the area. Granted, this may justify increasing a restitution award, particularly if obtaining a replacement vehicle of like make, model, and age would require the victim to incur additional costs (e.g., transport from a remote seller). On an adequate record, adding such actual

6

costs to the restitution award would appear rationally related to compensating the victim for his or her actual loss.  But on the record before us, we cannot say the prosecutor's unsworn statements regarding the unavailability of like property in the general vicinity provided the court with a rational basis to award the sizeable windfall that it did.

For these reasons, we vacate the restitution order and remand for a further restitution hearing.

## DISPOSITION

The restitution order is vacated.  The matter is remanded to the trial court for a further hearing to determine an appropriate amount of restitution consistent with the views expressed above.

_____
Fujisaki, Acting P.J.

WE CONCUR:

_____
Petrou, J.

_____
Rodríguez, J.

*People v. Mayfield* (A167825)